SO ORDERED,

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: April 17, 2023**

The Order of the Court is set forth below. The docket reflects the date entered.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: TRACY NEAL ROBINSON | CASE NO. 22-02414-KMS |
| DEBTOR | CHAPTER 11 |

### OPINION AND ORDER
### OVERRULING OBJECTION TO SUBCHAPTER V ELECTION

This matter came on for hearing on the U.S. Trustee's Objection to Debtor's Petition Designating Subchapter V Election, ECF No. 48, with Response by chapter 11 Debtor in Possession Tracy Neal Robinson, ECF No. 70. This proceeding is core under 28 U.S.C. § 157(b)(2)(A).

The Trustee objects that Robinson is ineligible to elect subchapter V of chapter 11 of the Bankruptcy Code because at the time of his petition, Robinson was not "engaged in commercial or business activities" within the meaning of 11 U.S.C. § 1182(1), which defines "debtor" under subchapter V. Robinson does not dispute that his poultry farming business was no longer operating when he filed this bankruptcy case. He argues instead that he is now and was at the time of the petition winding down his operation with activities that meet the "engaged in" requirement.

Robinson has met his burden of proof for subchapter V eligibility. Consequently, the Objection is overruled.

## FINDINGS OF FACT

The following facts are of record or were established by Robinson's testimony—in either case, undisputed.

For at least fifteen years, Robinson operated a poultry farming business under contract with Koch Foods, a chicken processing company. Am. 11 U.S.C.§ 1188(c) Status Rep., ECF No. 43 at 1 ¶ 3. For reasons it did not share with Robinson, Koch terminated the contract. *Id.* at 1. Robinson got a job with a local lumber yard as a loader operator, a position he still holds. Hr'g Tr., ECF No. 77 at 19. Several months after taking the new job, Robinson filed bankruptcy. *Id.*; Sch. I, ECF No. 30 at 18.

Robinson ran his poultry farm as a sole proprietor, and he proposes a liquidation in his pending Subchapter V Plan of Reorganization. *See* Plan, ECF No. 63 at 8, 10. He has one major secured creditor, a bank, which holds security interests not only in the former poultry operation but also in the surrounding land and in a manufactured home on the land, where Robinson lives. *Id.* at 8-9.

Before resorting to bankruptcy, Robinson tried to find another grower contract. ECF No. 77 at 13. He also tried—and is still trying—to sell the poultry farming operation. *Id.* He has had inquiries, none of which have come to anything. *Id.* Still, he is continuing to inspect his four chicken houses and keep them repaired. *Id.* at 14; *see also* ECF No. 63 at 10 ("Debtor's poultry operation remains in reasonably good condition . . . ."). And he mows around the chicken houses like he mows around his home and over the rest of his eighty-eight acres. ECF No. 77 at 13-14.

Robinson is also trying to sell the poultry farming equipment. ECF No. 77 at 15. He has sold one piece, but he has five or six more he needs to sell, including a tractor worth $35,000. *Id.* He believes all this remaining equipment will sell within six months. *Id.*

He believes the former operation can sell too, even if only for the price of the real property and the facilities' liquidation value. ECF No. 63 at 10, 11. But if not, he will either abandon the assets to the bank or will allow it to foreclose. ECF No. 77 at 16.

Robinson's debt totals roughly $487,000. Off. Form 106Sum, ECF No. 52 at 2. Substantially all of it arose from loans that funded the poultry farming business. ECF No. 77 at 17.

## CONCLUSIONS OF LAW

Congress passed the Small Business Reorganization Act of 2019 ("SBRA"), 11 U.S.C. §§ 1181-1195, to "streamline the bankruptcy process" for small business debtors, H.R. Rep. No. 116-171 (2019), *reprinted in* 2019 U.S.C.C.A.N. 366, 366, 2019 WL 3401849. The SBRA amended chapter 11 with a new subchapter V, *id.* at 372, which applies only to the subset of chapter 11 debtors that (1) are "engaged in commercial or business activities," excluding a single asset real estate business, and (2) owe total secured and unsecured debts of no more than $7,500,000 as of the filing of the petition, with at least fifty percent of that debt having arisen from the commercial or business activities. 11 U.S.C. § 1182(1)(A).[1] The debtor bears the burden of proof on subchapter V eligibility. *In re: Phenomenon Mktg. & Entm't, LLC*, No. 2:22-bk-10132, 2022 WL 3042141, at *1 (Bankr. C.D. Cal. Aug. 1, 2022) (observing that "vast majority of courts" place burden of

---

[1] The text quotes current § 1182. As originally enacted, § 1182 defined a subchapter V debtor as "a small business debtor." *See* H.R. Rep. No. 116-171, 2019 U.S.C.C.A.N. 366, 372. This definition implicitly referenced 11 U.S.C.§ 101(51D), which, like current § 1182, included the phrase "engaged in commercial or business activities." Consequently, early subchapter V cases construing the "engaged in" requirement cite § 101(51D). *See, e.g., In re Johnson*, No. 19-42063, 2021 WL 825156, at *4 & n.22 (Bankr. N.D. Tex. Mar. 1, 2021). The subchapter V debtor did not acquire its current—and temporary—separate definition until the following year in the bankruptcy amendments included in the Coronavirus Aid, Relief and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281, 310-11 (Mar. 27, 2020). Except for the aggregate debt limit of $7.5 million, the current definition of the subchapter V debtor in § 1182 is identical to the definition of "small business debtor" in § 101(51D) as also amended. Absent additional legislation, § 1182 will revert on June 21, 2024, to defining the subchapter V debtor as "a small business debtor." *See* Bankruptcy Threshold Adjustment and Technical Corrections Act, Pub. L. No. 117-151, 136 Stat. 1298, 1300 (June 21, 2022); *see generally Collier on Bankruptcy* ¶¶ 1180.02, 1182.LH (Richard Levin & Henry J. Sommer eds., 16th ed.) (effects of CARES Act and Bankruptcy Threshold Adjustment and Technical Corrections Act).

proof on debtor); *contra In re Body Transit, Inc.*, 613 B.R. 400, 409 (Bankr. E.D. Pa. 2020) (placing burden on creditor that challenged eligibility).

Here, it is undisputed that Robinson's debts total less than the $7.5 million maximum for subchapter V eligibility and that most, if not all, of the debt arose from his poultry farming business. The question is whether at the time of the petition, Robinson was "engaged in commercial or business activities" within the meaning of the statute.

"[T]he 'engaged in' inquiry is inherently contemporary in focus instead of retrospective, requiring the assessment of the debtor's current state of affairs as of the filing of the bankruptcy petition." *In re Johnson*, No. 19-42063, 2021 WL 825156, at *6 (Bankr. N.D. Tex. Mar. 1, 2021); *accord NetJets Aviation, Inc. v. RS. Air, LLC (In re RS Air, LLC)*, 638 B.R. 403, 410 (B.A.P. 9th Cir. 2022) (stating that contemporary focus is majority view); *contra In re Blanchard*, No. 19-12440, 2020 WL 4032411, at *2 (Bankr. E.D. La. July 16, 2020); *In re Bonert*, 619 B.R. 248, 256 (Bankr. C.D. Cal. 2020); *In re Wright*, No. 20-01035, 2020 WL 2193240, at *3 (Bankr. D.S.C. 2020).

The phrase "commercial or business activities" is generally construed very broadly. *In re RS Air*, 638 B.R. at 410; *Lyons v. Fam. Friendly Contracting LLC (In re Fam. Friendly Contracting LLC)*, No. 21-14213, 2021 WL 5540887, at * 3 (Bankr. D. Md. Oct. 26, 2021) ("Virtually all [courts] have applied a liberal construction of the phrase in keeping with the SBRA's purpose and the language of § 1182(1)(A)."); *but see In re Johnson*, 2021 WL 825156, at *8 (narrowly defining "commercial or business activities" as "the exchange or buying and selling of economic goods or services for profit."). The totality of the circumstances determines whether a debtor is "engaged in commercial or business activities." *In re RS Air*, 638 B.R. at 410 (stating

that totality of circumstances is "generally" applied standard); *In re Offer Space*, 629 B.R. 299, 306 (Bankr. D. Utah 2021); *In re Ikalowych*, 629 B.R. 261, 283 (Bankr. D. Colo. 2021)

Robinson asserts that when he filed the petition, he was winding down his poultry farming business and therefore was "engaged in commercial or business activities" as required for subchapter V eligibility. The Trustee objects that the poultry farm ceased operation more than a year before Robinson filed bankruptcy, a time so distant from the date of the petition that Robinson's current activities cannot be considered winding down. *See* ECF No. 77 at 9 ("We argue that the debtor is not winding down anything."). The Trustee also argues that the activities Robinson is engaged in "are not sufficient [i]n themselves" for subchapter V eligibility. *Id.* at 11.[2]

The Trustee's arguments fail. First, he cites no authority for the premise that a wind-down must be completed within a certain amount of time after the business has ceased operation. Second, the bare assertion that Robinson's activities do not meet the standard cannot, without more, carry the day.

Bankruptcy courts across jurisdictions have held that a debtor may be "engaged in commercial or business activities" when the business itself is no longer operating. *See In re Vertical Mac Constr., LLC*, No. 6:21-bk-01520, 2021 WL 3668037, at *3 (Bankr. M.D. Fla. July 23, 2021) ("'[A]ctivities' encompasses acts that are business or commercial in nature but fall short of an actual operating business."); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 237 (Bankr. S.D. Tex. 2021) ("[Section 1182(1)(A)] . . . does not require a debtor to maintain its core or historical business operations on the petition date. It requires that the debtor was engaged in commercial or business activities."); *In re Offer Space, LLC*, 629 B.R. 299, 309 (Bankr. D. Utah

---

[2] Initially, the Trustee also contended that Robinson is ineligible because he does not intend to return to poultry farming and because he works as an employee in an unrelated business. ECF No. 48 at 6. But these arguments became irrelevant after the Response and at the hearing, when Robinson based eligibility on wind-down activities. *See* ECF No. 70 at 4-7; ECF No. 77 at 9, 22.

2021) ("[A] debtor's business need not be operational to be eligible for Subchapter V relief."); *In re Ikalowych*, 629 B.R. at 284-85 ("[T]he foregoing Wind Down Work as well as the Debtor's other actions qualify as 'commercial or business activities' . . . within the broad and expansive meaning of the term . . . ."); *see also In re RS Air*, 638 B.R. at 409 ("A majority of courts have held that a debtor need not be 'actively operating' on the petition date . . . ."); *Nat'l Loan Inv'rs, L.P. v. Rickerson (In re Rickerson)*, 636 B.R. 416, 425 (Bankr. W.D. Pa. 2021) ("[I]t strikes the Court as perhaps not unreasonable to conclude that a business that has ceased its normal operations, but which is in a winding down mode, may still be said to be engaging in commercial or business activities . . . ." (dictum)).

Applying broad construction, courts have recognized a variety of wind-down functions as "commercial or business activities," including "maintaining bank accounts and preparing assets for sale; collecting accounts receivable, managing stock and winding down a business; managing a limited liability company and receiving income from that company; and maintaining facilities, filing tax returns, selling assets, and overseeing contractors." *In re McCune*, 635 B.R. 409, 420-21 (Bankr. D.N.M. 2021) (footnotes omitted).

Robinson asserts, as he testified, that he "continues to manage his farm assets, is actively seeking buyers for the entirety of the farm, or parts thereof. . . . [and] maintains and inspects the improvements on his property." ECF No. 70 at 4. He compares these activities to those in other wind-down cases where debtors were held eligible for subchapter V. ECF No. 70 at 2-7. In three of the four cases Robinson cites, debtors' "commercial and business activities" at the time of the petition included actively maintaining the value of assets and working to sell them. *See In re Vertical Mac*, 2021 WL 3668037, at *3 ("[Debtor] was engaged in efforts to sell its assets . . . ."); *In re Port Arthur Steam*, 629 B.R. at 237 (finding that Debtor "actively maintained its facility and

vehicles"; its managers "worked [prepetition] on a plan to sell assets and pay creditors in chapter 11"; and it "sold an asset [prepetition] worth about $35,000"); *In re Offer Space*, 629 B.R. at 306 ("[Debtor was] taking reasonable steps to pay its creditors and realize value for its assets."). In the fourth case, the LLC had already surrendered its assets. *In re Ikalowych*, 629 B.R. at 270.

As to the Trustee's contention that Robinson's activities are insufficient, the totality of the circumstances standard does not dictate a quantum of activities or time engaged in them. The *Vertical Mac* court defined "activities" to include even a single act. 2021 WL 3668037, at *3 ("Activities is understood then to reference *one* or more acts." (emphasis added)). The *Ikalowych* debtor spent only about twelve hours a month on the wind-down work and forecasted fewer hours in the future. 629 B.R. at 271.

Robinson ran his poultry operation as a sole proprietorship. What must a sole proprietor do to wind down the business besides preserving the value of the assets and marketing them for sale? The Trustee does not say.

The totality of the circumstances test is a fact-specific inquiry. And on the facts here, Robinson has met his burden of proof for subchapter V eligibility.

## ORDER

The Trustee's Objection is therefore **ORDERED OVERRULED.**

##END##